IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GEORGE AUSTIN,                    :      NO. 05-280
                                 :
              Petitioner,        :
                                 :
         v.                      :
                                 :
UNITED STATES OF AMERICA,        :
                                 :
              Respondent.        :


                      M E M O R A N D U M


EDUARDO C. ROBRENO, J.                              March 10, 2010


          Before the Court is George Austin's ("Petitioner")

petition, pursuant to 28 U.S.C. § 2255 (the "Motion"), alleging

five grounds of ineffective assistance of his trial and appellate

counsel, in violation of his Sixth Amendment rights.  For the

reasons that follow, the Motion will be denied and the petition

will be dismissed.


I.  **FACTUAL BACKGROUND**

          On December 8, 2005, Petitioner was convicted by a jury

of the following twenty-nine (29) criminal charges:[1]


     Count 1:

          Conspiracy to interfere with interstate commerce by

          robbery, in violation of 18 U.S.C. § 1951(a);

_____

     [1]    See doc. no. 97 (Government withdrew 2 counts of Hobbs
Act robbery and 2 counts of § 924(c) before going to trial).

<u>Counts 2, 4, 6, 8, 12, 14, 16, 18, 20, 22, 24, 28, 30 & 32</u>
(14 Counts):

> Aiding and abetting and interference with interstate
> commerce by robbery, in violation of 18 U.S.C. §§ 1951
> & 1952;

<u>Counts 3, 5, 7, 9, 13, 15, 17, 19, 21, 23, 25, 29, 31 & 33</u>
(14 Counts):

> Carrying and using, and aiding and abetting the
> carrying and using, of a firearm during and in relation
> to a crime of violence, in violation of 18 U.S.C. §
> 924(c)(1).

The facts supporting the indictment were that, from
January 10, 2005 through February 9, 2005, Petitioner and three
co-conspirators committed a series of armed robberies at corner
stores and convenient stores in and around Philadelphia's 25th
Police Precinct.  During these robberies, the robbers wore masks,
were armed with a shotgun and a handgun,[2] and would threaten and
sometimes hit their victims.

On February 9, 2005, the gunmen robbed one convenience

---

[2]     Petitioner and the co-conspirators were charged with
using the following loaded weapons during the commission of the
robberies:  one Remington Wingmaster pump shotgun, model 870 LH
with an obliterated serial number containing five live rounds of
ammunition and one Bryco arms .38 caliber handgun, model #380,
serial number 1254394 containing six live rounds.  <u>See</u>
Indictment.

store at 9:33 p.m. and another convenience store at 11:45 p.m.
Shortly thereafter, at approximately midnight on February 10,
2005, Philadelphia Police stopped a car and apprehended
Petitioner George Austin and co-conspirators Eric Andrews, Dujuan
Anderson, and Kareem Stansbury.[3]  The Police recovered evidence
of the robberies, which included money, guns, and certain
clothing.

On March 7, 2006, this Court sentenced Petitioner on
the following twenty-five (25) criminal charges:

Counts 1, 12, 13, 16, 2, 20, 22, 28, 30, 32, 4, 6:

57 months imprisonment; 3 years supervised release;
$8,881 restitution; and a $2,500 special assessment;

Counts 13, 15, 17, 21, 23, 29, 31, 33, 5, 7, 9:

25 years imprisonment (to run consecutive to Counts 1,

_____

[3]     On May 11, 2005, Petitioner was charged with the
following criminal counts: (a) one (1) count of conspiracy to
commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a);
(b) fourteen (14) counts of obstructing, delaying, and affecting
commerce and the movement of articles and commodities in
commerce, and attempting to do so, by robbery (Hobbs Act
robbery), in violation of 18 U.S.C. § 1951(a) and 2; and (c)
fourteen (14) counts of knowingly using and carrying, and aiding
and abetting the use and carrying of, a firearm, during and in
relation to a crime of violence for which Defendants may be
prosecuted in a court of the United States, that is, conspiracy
to interfere with commerce by robbery, in violation of 18 U.S.C.
§ 924(c)(1) and 2.

Both Petitioner and Eric Andrews pleaded not guilty and
were subsequently found guilty at a trial by jury before this
Court.

2, 3, 4, 6, 8, 12, 14, 16, 20, 22, 28, 30, 32);

Count 3:

7 years imprisonment (to run consecutive to Counts 1,

2, 3, 4, 6, 8, 12, 14, 16, 20, 22, 28, 30, 32));

Counts 18, 19, 24, 25:

DISMISSED.

See Sent. J., doc. nos. 132-33 (total prison sentence of 286 years and 9 months imprisonment, of which 282 years comprised statutory mandatory sentences; 5 years supervised release, $8,881 restitution, a $2,500 special assessment); see also Govt Resp. 2, doc. no. 162.

## II.  PROCEDURAL HISTORY

On March 15, 2006 Petitioner filed a timely appeal of his sentence to the Third Circuit, which on June 7, 2007, affirmed this Court's judgment.  See Govt Resp 2.

On April 15, 2008, Petitioner filed the instant habeas corpus motion , pursuant to 28 U.S.C. § 2255, challenging this Court's sentence and requesting that the Court vacate, set aside, or correct his sentence for ineffective assistance of counsel. See Pet'r's Mot., doc. no. 156.[4]

---

[4]     The instant Motion was not filed with the clerk's office until April 28, 2008.  However, as Petitioner signed the Motion on April 14, 2008, it is appropriate to deem that the date upon which it was filed for purposes of the statute of

-4-

In his habeas motion, Petitioner alleges ineffective assistance of counsel of trial and appellate counsel, R. Kerry Kalmbach, Esq., on the following five grounds:

1.  Whether trial counsel failed to object to the indictment before trial, in violation of the Sixth Amendment;[5]

2.  Whether trial counsel failed to object to the Indictment 18 U.S.C. § 924(c)(1) counts on multiplicity grounds prior to trial;

3.  Whether trial counsel failed to object to jury instructions at trial, which merged 18 U.S.C. § 371 with 18 U.S.C. 1951, Hobbs Act conspiracy;

4.  Whether trial/appellate counsel failed to file a timely petition for certiorari with the U.S. Supreme Court on Petitioner's request; and

5.  Whether trial counsel failed to suppress a coerced confession prior to trial.

See Pet'r's Mot. 6-7.

_____

limitations.  See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (holding that it is appropriate to deem a habeas petition filed at the time it is delivered to prison officials for mailing since a prisoner is unable to influence whether a habeas petition is received promptly by the district court).

[5]  Here, Petitioner contends that his trial counsel failed to object to the competency of Indictment counts 1 and 2 prior to trial and failed to object to the conviction or sentence where multiple counts under 18 U.S.C. § 924(c) were linked to a single conspiracy count.  See Pet'r's Mot 6.

On December 10, 2008, the Government filed a response in opposition to Petitioner's Motion, to which Petitioner replied on January 12, 2009. <u>See</u> Govt Resp; Pet'r's Traverse, respectively. Petitioner's Motion is now ripe for adjudication.

## III. LEGAL PRINCIPLES

### A. <u>Legal Standard</u>

Section 2255 allows a prisoner in federal custody to attack his sentence if it was imposed in violation of the Constitution or statute, the court lacked jurisdiction to impose it, it exceeds the maximum allowed by law, or it is otherwise subject to collateral attack. <u>See</u> 28 U.S.C. § 2255. The petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that he is not entitled to relief. <u>See</u> <u>United States v. Victor</u>, 878 F.2d 101, 103 (3d Cir. 1989).[6]

Further, § 2255 "is expressly limited to challenges to the validity of the petitioner's sentence." <u>United States v. Eakman</u>, 378 F.3d 294, 297 (3d Cir. 2004) (internal citations omitted). "Section 2255 permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which

_____

[6] Here, Petitioner is not entitled to an evidentiary hearing because it is clear from the record that his habeas petition should be denied for the reasons herein. Further, the Court need not address Petitioner's substantive allegations because dismissal of the instant habeas petition is warranted on procedural grounds.

-6-

inherently results in a complete miscarriage of justice.'" Id.
at 298 (citations omitted). To prove successful, a petitioner is
required to allege "(1) that the district court received
'misinformation of a constitutional magnitude' and (2) that the
district judge relied at least in part on that misinformation."
Id.

B.  Applicable Law

Under the Sixth Amendment, criminal defendants are
entitled to the "'effective assistance of counsel' -- that is,
representation that does not fall 'below an objective standard of
reasonableness' in light of 'prevailing professional norms.'"
Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (citing Strickland v.
Washington, 466 U.S. 668, 686 (1984)). The Strickland Court
developed a two-pronged standard governing ineffective assistance
of counsel claims. 466 U.S. at 668; see also Williams v. Taylor,
529 U.S. 362, 363 (2000) (stating that the "Strickland test
qualifies as 'clearly established Federal law, as determined by
the Supreme Court'").

First, a petitioner must show that his counsel's
performance was deficient. Id. at 687. To demonstrate
deficiency, Petitioner must show that his trial counsel's
performance "fell below an objective standard of reasonableness,"
a performance which the court judges based on the case-specific
facts and "as of the time of counsel's conduct." Id. at 688, 690

(establishing that failure to raise a meritless claim does not warrant ineffectiveness as counsel).  Further, Petitioner here "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689.

Second, a petitioner must show that the deficient performance prejudiced his defense.  Id.  To establish prejudice by a deficient performance, Petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable."  Strickland, 466 U.S. at 687.  Here, Petitioner must show that "there is a reasonable probability[7] that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

## IV.  ANALYSIS

The Court denies Petitioner's ineffective assistance of counsel claims because Petitioner fails to meet both prongs of Strickland.  Even assuming that any of the examples of ineffective assistance of counsel proffered by Petitioner do constitute deficient performance to satisfy prong one of Strickland, Petitioner is unable to show that these actions were prejudicial to his defense.

---

[7]     "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 687.

The Strickland court found that the Petitioner bears the burden of demonstrating that his trial counsel's errors were prejudicial. Id. at 697 (finding that the court need not address the quality of counsel's performance where a defendant failed to establish prejudice). To demonstrate prejudice, Petitioner must establish a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 692.

Specifically, Petitioner contends that his counsel at trial was ineffective on the following five grounds.

A.   Failure of Trial Counsel to Object to the Indictment, Convictions, and Sentence

First, Petitioner argues that trial counsel failed to object to the Indictment, convictions, and sentence for the multiple counts brought under 18 U.S.C. § 924(c) as they were linked to a single count of conspiracy to commit Hobbs Act robbery, in violation of Petitioner's Sixth Amendment rights. See Pet'r's Mot. 6. The Government, in interpreting Petitioner's claim as one of duplicity, opposes this argument as each § 924(c) count was linked both to the conspiracy charge and to matching Hobbs Act robbery counts. See Govt Resp. 17.

"Duplicity is the improper joining of distinct and separate offenses in a single count." United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998) (citing United States v. Starks,

515 F.2d 112, 116 (3d Cir. 1975)).  "Duplicitous counts may

conceal the specific charges, prevent the jury from deciding

guilt or innocence with respect to a particular offense, exploit

the risk of prejudicial evidentiary rulings or endanger fair

sentencing.  Id. (internal citations omitted).

The Third Circuit further held that "[t]he allegation

in a single count of conspiracy to commit further crimes is not

duplicitous."  United States v. Reyes, 930 F.2d 310, 213 (3d Cir.

1991) (quoting Braverman v. United States, 317 U.S. 49, 54

(1942)).

The Government argues that it is proper for a

conspiracy count to include multiple criminal offenses

identifying the nature of the overt acts of the conspiracy

itself.  See Govt Resp. 18.  Here, Petitioner was indicted on and

convicted of criminal charges stemming from four gunmen

perpetrating twelve different armed robberies of convenience

stores.  See Indictment.  As such, it is entirely appropriate for

an Indictment to list as different counts the criminal charges

stemming from both the conspiracy and the underlying offenses

that brought the conspiracy to fruition.

Therefore, Petitioner's trial counsel was not

ineffective as he chose not to pursue this unmeritorious claim.


B.   Failure of Trial Counsel to Object to Improper

<u>Indictment Charges</u>

Second, Petitioner argues that trial counsel failed to object to improper indictment charges, pursuant to 18 U.S.C. § 924(c)(1), on multiplicity grounds.  Similar to the first ground, Petitioner argues that counsel failed to timely object "that all 924(c)(1) counts were based on the same unit of prosecution, the § 1951 Hobbs Act conspiracy."  <u>See</u> Pet'r's Mot. 6.  The Government opposes, contending that no multiplicity existed as each count referred to a particular robbery effectuated in a stream of robberies.  <u>See</u> Govt Resp. 16.

Multiplicity occurs where an indictment charges a single offense repeatedly in multiple counts.  <u>Haddy</u>, 134 F.3d at 548.  Further, "multiplicity may result in multiple sentences for a single offense in violation of double jeopardy, or otherwise prejudice the defendant."  <u>Id.</u> n.7 (internal citations omitted).

To reiterate the reasoning set forth above, each count in the Indictment addressed one of twelve robberies perpetrated by Petitioner.  Here, the indictment charged multiple offenses in multiple counts.  Therefore, Petitioner was convicted of armed robbery on twelve separate occasions and the Indictment is not improper for repeatedly charging Petitioner multiple times for one offense.

As such, Petitioner's second claim cannot stand.

C.  Failure of Trial Counsel to Object to Improper Jury
    Instructions

Third, Petitioner argues that his rights were violated
by trial counsel's failure to object to jury instructions, which
merged 18 U.S.C. § 371 with 18 U.S.C. § 1951, conspiracy to
commit Hobbs Act robbery.  The Government contends that
Petitioner's reliance on one charge to the jury without objection
by his trial counsel does not result in error.

In Count One, the Indictment charges Petitioner with
conspiracy to interfere with interstate commerce by robbery, in
violation of 18 U.S.C. § 1951.  The Court gave the following
final instructions to the jury as to the elements of conspiracy
under § 371:

> As to defendant Austin, he is charged in 25 counts of the
> indictment, Count 1 for conspiracy to commit Hobbs Act
> Robbery . . . . Let me talk about Count 1 of the
> indictment, the count of conspiracy. Count 1 charges that
> on or about January 10, 2005, to on or about February 9,
> 2005, in the Eastern District of Pennsylvania, the
> defendants George Austin and Eric Andrews together with
> others, conspired and agreed together to commit robbery
> which robbery would unlawfully obstruct, delay and affect
> commerce and the movement of articles and commodities in
> commerce, and that defendants George Austin and Eric
> Andrews together with others conspired to unlawfully take
> and obtain money from a person and persons of employees
> and customers of the victim businesses . . . .
>
> Now this charge of conspiracy is based upon a federal
> statute, and that is Title 18 United States Code Section
> 371 which makes it crime quote, "if two or more persons
> conspire to commit any offense against the United States
> in any manner or for any purpose and one or more of such
> a persons doing the act to affect the object of the
> conspiracy" close quote.

<u>See</u> Govt Resp. 21-22, Ex. A at 2-4 (citing Trial Tr. 52:8-10; 53:20-1.

Pursuant to the Third Circuit Model Criminal Jury Instructions for a defendant charged with conspiracy to commit Hobbs Act robbery, in violation of § 1951, "the appropriate instructions on conspiracy [as defined in 18 U.S.C. § 371] should be given." Third Circuit Model Jury Instruction (criminal) 6.18.1951.[8] As § 371 lays out the element necessary to show a conspiracy, the Third Circuit has explicitly stated that conspiracy need not specifically include the element of the substantive offense (here, Hobbs Act robbery) the accused may have conspired to commit. <u>United States v. Werme</u>, 939 F.2d 108 (3d Cir. 1991).[9]

---

[8]    In relevant part, 18 U.S.C. § 371 states:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

<u>See</u> 18 U.S.C. § 371.

[9]    The Court instructed the jury exactly as to the nature of conspiracy, pursuant to § 371, as it related to the crimes charged in the Indictment:

So, in Count 1, the defendants are accused of having been a member of a conspiracy to commit robbery. A conspiracy is a kind of criminal partnership, a combination or agreement of two or more persons to join together to

-13-

Further, jury instructions must state that, to comport with a defendant's constitutional due process right, the Government must prove every element of the charged offense beyond a reasonable doubt. <u>Carella v. California</u>, 491 U.S. 263, 265 (1989). Thus, the inquiry becomes "whether the court's instruction constituted a mandatory presumption by 'directly foreclos[ing] independent jury consideration of whether the facts proved established certain elements of the offense with which [the defendant] was charged.'" <u>Id.</u> at 266.

Here, the Court instructed the jury as to the elements of the crime of conspiracy as follows:

Now, in order to sustain the burden of proof of the crime

_____

accomplish some unlawful purpose. The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal law which the law refers to as a substantive crime . . . .

[I]n this case, for example, the substance crime is the actual act of armed robbery, as specified in Counts 2, 4, 6, 8, 10 12, 14, 16, 18, 22, 24, 26, 28, 30 and 32 of the indictment. Indeed, you might find the defendants guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy was not actually committed. Congress has deemed it appropriate to make conspiracy standing alone a separate crime even if a conspiracy is not successful. This is so because collectively the criminal activity poses a greater threat to the public safety and welfare than it does individual conduct and it increases likelihood of success of a - particular criminal venture.

<u>See</u> Trial Tr. 54:2-22.

of conspiracy to commit Hobbs Act robbery as charged in Count 1 of the indictment, the Government must prove the following three essential elements beyond a reasonable doubt. Number one, the conspiracy, agreement, or understanding to commit Hobbs Act robbery as described in the indictment was formed, reached or entered into by two or more persons. Number two, at some time during the existence or life of the conspiracy, agreement or understanding, the defendant knew the purposes of the agreement and with that knowledge then deliberately joined the conspiracy, agreement or understanding. And three, at some point during the existence or life of the conspiracy, agreement or understanding, one of its alleged members knowingly performed one of the overt acts charged in the indictment, and did so in order to further to-advance the purpose of the agreement.

Now a criminal conspiracy is an agreement or a mutual understanding knowingly made and knowingly entered into by at least two people who violate the law by some joint or common plan or course of action. So it is in its very true sense a partnership in crime.

A conspiracy or agreement to violate the law, like any other kind of agreement or understanding need not be formal, written or even expressed directly in every detail. The Government must prove that the defendants knowingly and deliberately arrived at an agreement or understanding that they and perhaps others would violate some law by means of some common plan or course of action as alleged in Count 1 of the indictment.

It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charge of conspiracy. To prove the existence of a conspiracy or an illegal agreement, the Government is not required to produce a written contract between the parties or even produce an expressed oral agreement spelling out all of the details of the understanding. To prove that a conspiracy existed, moreover, the Government is not required to show that all the people named in the indictment as members of the conspiracy were in fact parties to the agreement or that all the members of the alleged conspiracy were named or charged or that all of the people whom the evidence shows were actually members of the conspiracy agreed to all of the means or methods set out in the indictment.

So, unless the Government proves beyond a reasonable
doubt that a conspiracy as I have just explained it,
actually existed, then you must acquit the defendants.

See Trial Tr. 55:23-56:18.

The Court clearly and properly instructed the jury as
to the definition of and necessary elements the Government must
demonstrate to prove Petitioner was guilty of conspiracy.  The
Court did not foreclose independent jury consideration of the
facts to determine whether Petitioner committed conspiracy to
commit Hobbs Act robbery, nor whether Petitioner actually
committed Hobbs Act robbery, the substantive underlying offense.
Therefore, counsel cannot have been ineffective in failing to
object to the proper recitation of the law.  As such,
Petitioner's third claim must be dismissed.

D.    Failure of trial/appellate counsel to file a timely
      petition for certiorari with the U.S. Supreme Court

Fourth, Petitioner argues that, upon his request,
trial/appellate counsel failed to file a certiorari petition
before the U.S. Supreme Court.  In his reply, Petitioner further
alleges that his CJA-appointed appellate counsel "did not consult
with Petitioner before making the decision to abandon the
petition for certiorari."  See Pet'r's Traverse 6.

In response, the Government avers that Petitioner does
not demonstrate that he provided his counsel with proof to
support the certiorari petition and, in the alternative,

Petitioner still cannot demonstrate deprivation of a constitutional right or prejudice, under Strickland.  See Govt Resp. 24.  The Strickland court held that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  466 U.S. at 689.

The Supreme Court has held that states do not violate an indigent's constitutional rights where counsel fails to file discretionary appeals.  Ross v. Moffitt, 417 U.S. 600, 610-11 (1974).  Further, a criminal defendant does not have a constitutional right to pursue discretionary state appeals or applications for review in the United States Supreme Court. United States v. King, 2008 U.S. Dist. LEXIS 72579, at *21 (E.D. Pa. Sept. 23, 2008) (holding that respondent was not "deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely") (citing Wainwright v. Torna, 455 U.S. 586, 587-88 (1982)).

Here, Petitioner argues that his appellate counsel never discussed abandoning the appellate process and failing to file a writ of certiorari with the U.S. Supreme Court.  In Roe v. Flores-Ortega, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about

an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  528 U.S. 470, 480 (2000).

Where Petitioner had a voluntary confession read aloud during trial and where Petitioner does not claim that he espoused a desire to appeal his conviction to the U.S. Supreme Court, without more, this Court does not find that Petitioner's appellate counsel was in error.  Petitioner did not have a constitutional right to pursue a discretionary writ for certiorari and Petitioner provided no facts upon which a meritorious appeal would be based.

Further, Petitioner does not now demonstrate adequate prejudice based on counsel's failure to pursue appeals to the highest tribunal.  As such, on this ground, Petitioner did not demonstrate deprivation of a constitutional right nor prejudice to meet the ineffective assistance of counsel standard espoused in <u>Strickland</u>.

E.   <u>Failure of trial counsel to suppress a coerced confession prior to trial</u>

Fifth, Petitioner argues that trial counsel failed to suppress his confession, which he argues was coerced, tainted and, therefore, inadmissible.  Specifically, Petitioner contends that statements made to police officers are inadmissible fruits

of a coerced confession emanating from an illegal traffic stop.

The Government, however, argues that the trial record sufficiently demonstrates that the statements given by Petitioner at the traffic stop were Mirandized and not coerced, therefore it is not appropriate to have a hearing on this matter and Petitioner's last ground warrants dismissal.  <u>See</u> Govt Resp. 27. Here, the Government contends that, pursuant to the trial record, Petitioner waived his <u>Miranda</u> rights once given and therefore, the resulting confession was voluntary.

    1.  <u>Terry Stop</u>

The Fourth Amendment protects "against unreasonable searches and seizures."  Const. amend IV.  "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."  <u>United States v. Robertson</u>, 305 F.3d 164, 167 (3d Cir. 2002).

An often-invoked exception to this warrant requirement was established in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  This exception, known as a "<u>Terry</u> stop," allows a law enforcement officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000) (citing <u>Terry</u>, 392 U.S. at 30).  Under <u>Terry</u>, a police officer is permitted to conduct a protective search for weapons in conformance with the Fourth Amendment ""where [s/he] has reason

to believe that [s/he] is dealing with an armed and dangerous individual . . . . The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [his/her] safety or that of others was in danger." 392 U.S. at 27.

In order to demonstrate that reasonable suspicion exists, the searching officer is required to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the search. <u>Id.</u> at 21; <u>see also</u> <u>United States v. Ubiles</u>, 224 F.3d 213, 217 (3d Cir. 2000) (stating that in order to make a showing of reasonable suspicion "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity'") (citations and internal quotation marks omitted).

Further, searches incident to a Terry stop are lawful so that an officer may search areas of a car where a weapon may be "placed or hidden . . . if the police officer possesses a reasonable belief based on 'specific and articulable facts taken together with rational inferences from those facts' that the suspect is dangerous and may gain access to that weapon." <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983).

In this case, police officers testified at trial that once the vehicle Petitioner was in matched a flash information

-20-

for an outstanding warrant, they pulled over the car. Upon
approaching the vehicle, the trial testimony of arresting police
Officers Steven Wheeler and his partner, Officer Donald Liebsch,
revealed that Petitioner was seen attempting to cover the handle
of a gun located in the rear seat. See Trial Tr. 78-82; Govt
Resp 33. For their own safety, the Officers ordered Petitioner
out of the car. See id. The Officers then conducted a limited
search, based on their having seen the gun, and recovered a pump
action shotgun.

Here, no Fourth Amendment violation occurred as
officers are permitted to order car occupants out for safety
concerns. Pennsylvania v. Mimms, 434 U.S. 106 (1977). Since the
car in which Petitioner was located was stopped based on its
match to a flash information regarding an armed robbery, the stop
itself was lawful. See also United States v. Bonner, 363 F.3d
213, 216 (3d Cir. 2004) (finding that an officer may order an
occupant out of a car without any particularized suspicion
following a lawful stop of a vehicle).[10]  Finally, Officers

---

[10]    Police may seize evidence found in plain view when (1)
their intrusion is lawful and (2) the incriminating nature of the
evidence is immediately apparent. Horton v. California, 496 U.S.
128 (1990). Here, the gun was in plain sight, located on the
rear seat of the car, therefore the Officers' intrusion and
seizure of the gun was lawful. Where Petitioner's fifth claim be
construed to include seizure of the pump action shogun, it must
be denied as the initial Terry stop was lawful based on the flash
description of the car and its occupants and, after viewing the
gun in plain sight, its seizure was also proper.

-21-

Wheeler and Liebsch secured the vehicle, while a search warrant was executed, resulting in the seizure of clothing, photographs, and a cell phone.  <u>See</u> Govt Resp. 33.

  2. <u>Miranda Rights</u>

  Under the Fourth Amendment, an individual taken into custody must be Mirandized (i.e., warned of his or her right to remain silent and "that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires"). <u>Miranda v. Ariz.</u>, 384 U.S. 436, 478-79 (1966).

  A waiver of these rights is valid if "it is made voluntarily, knowingly and intelligently."  <u>Reinart v. Larkins</u>, 379 F.3d 76, 88 (3d Cir. 2004) (quoting <u>Escobedo v. Illinois</u>, 378 U.S. 478, 490 n.14 (1964)); <u>cf.</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.").  The Government bears the burden of establishing a valid waiver by a preponderance of the evidence. <u>Colorado</u>, 479 U.S. at 168-69.

  The test for waiver has two prongs:

> First, the relinquishment of the right must have been
> voluntary in the sense that it was the product of a free
> and deliberate choice rather than intimidation, coercion,
> or deception.  Second, the waiver must have been made

with a full awareness of both the nature of the right
being abandoned and the consequences of the decision to
abandon it.  Only if the totality of the circumstances
surrounding the interrogation reveal both an uncoerced
choice and the requisite level of comprehension may a
court properly conclude that the Miranda rights have been
waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (emphasis added); see

also United States v. Sriyuth, 98 F.3d 739, 749 (3d Cir. 1996)

(quoting Moran, 475 U.S. at 421); 18 U.S.C. § 3501(a).[11]

Once Petitioner was removed from the car and a search

warrant was executed, he was arrested and taken to police

headquarters.  At the precinct, Petitioner was interviewed by

Philadelphia Police Detective John Komorowski ("Det. Komorowski")

several hours after Petitioner's arrest.  See Trial Tr. 88:16-17

(noting that the copy of Petitioner's statement was taken by Det.

_____

[11]    As 18 U.S.C. § 3501(a) provides:

The trial judge in determining the issue of voluntariness
[of confessions] shall take into consideration all the
circumstances surrounding the giving of the confession,
including (1) the time elapsing between arrest and
arraignment of the defendant making the confession, if it
was made after arrest and before arraignment, (2) whether
such defendant knew the nature of the offense with which
he was charged or of which he was suspected at the time
of making the confession, (3) whether or not such
defendant as advised or knew that he was not required to
make any statement and that any such statement could be
used against him, (4) whether or not such defendant had
been advised prior to questioning of his right to the
assistance of counsel[,] and (5) whether or not such
defendant was without the assistance of counsel when
questioned and when giving such confession.

18 U.S.C. § 3501(a).

-23-

Komorowski at "5:10 a.m. on February 10, 2005 inside our
detective division").

Det. Komorowski further testified as to the
conversation he had with Petitioner that evening, which resulted
in Petitioner's confession to the armed robberies that was typed
by computer, printed out, read by Petitioner, orally agreed to by
Petitioner and ultimately signed and initialed by Petitioner.[12]
Det. Komorowski first stated that he explained to a "calm . . .
laid back" Petitioner that he was there to discuss the robberies
for which he was suspected of and then he read Petitioner his
Miranda rights.  See Trial Tr. 88:22-25; 89:1-8 ("Q: Can you tell
the jury exactly what you told him regarding what you wanted to
speak to him about and his Miranda rights?  A: I had explained
that he was under arrested for a robbery that evening.  I
explained to him that I was going to read him Constitutional
warnings.  I did so, asked him if he understood them, I went over
with him and then we went into a statement part where I asked him
questions and answers.").[13]

---

[12]    See Trial Tr. 95:21 (A:  "When we were done talking,
it's [the statement by Petitioner] is printed out . . . . Q: But
you were both reading on the computer sitting besides you?  A:
Yes.).

[13]    Det. Komorowski testified as to the following, in
regard to having read Petitioner his Miranda rights:

     Q:    Can you read the jury the rights and Mr. Austin's
           answers as you did it that early morning hour?

-24-

The following testimony provides the evidence proffered into the trial records, surrounding the nature and circumstances of Petitioner's confession to Det. Komorowski and waiver of his <u>Miranda</u> rights:

Q:    Can you read to the jury what he told you, the questions you asked and the response he gave?

A:    Question:  George, I am Detective Komorowski, and I will be conducting this interview, do you understand that?
         His answer was, Yes.

      Question:  George, did I read you your Miranda warnings and did you understand them?
         His answer was, Yes.

      Question:  George, are you giving a willing statement?
         His answer was, Yes.

———————

A:    Yes.  Do you understand that you have a right to keep quiet and do not have to say anything all? His answer was, Yes.  Do you understand anything you say can and will be used against you?  His answer was, Yes.  Do you want to remain silent? His answer was, No.  Do you understand that you have a right to talk with a lawyer before we ask you any questions?  His answer was Yes.  You understand that if you cannot afford to hire a lawyer and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge?  His answer was, Yes.  Do you want to talk with a lawyer at this time or have a lawyer with you while we ask you questions?  His answer was, No.  Are you willing to answer questions of your own free will without force or fear, and without any threats or promise having been made to you?  His answer was, Yes.  He signed them, I signed them, he also initialed next to the yes and no question.

<u>See</u> Trial Tr. 89:16-90:14.

Question: George, have you been asked if you need to use the bathroom?
    Answer: Yes.

Question: George, have you been given anything to eat or drink?
    Answer:. ..Yes,, you gave me a Mountain Dew soda.

Question: George, do you read and write the English language.
    His answer was, Yes.

Question: George, are you under the influence of drugs or alcohol?
    His answer was, No.

Question: George, tell me what happened -- what led to your arrest?
    His answer was, I was involved in some robberies.

Next question, Why did you pick that store?
    It made good money because it was a gas station.

Question: What time did you go to the Sunoco on the Boulevard to take part in the robbery?
    Answer: It was about 9:00 p.m.

Question: When you were in the store, what did you do?
    Answer: I went in, I jumped over the counter, pointed the shotgun I had at the cashier's head and asked for the money. I grabbed money from a blunt box that was under the register, got the money, got in the minivan and drove off.

Question: How much money did you get during the robbery?
    Answer: I'm not sure.

Question: After this robbery, where did you go and what did you do?.
    Answer: Drove around for a while.

Question: Did you take part in any other robberies?

Answer: Yes. At about 11:30 p.m. the Quik Stop on Frankford Avenue. Went in, I had the shotgun again, and I jumped the counter, told them it was a robbery and I pointed the gun at the cashier. After that, I grabbed money from the register, left the store and got in the van and drove off. Got caught a little bit later.

Question: When the cops caught you, where were you going?
Answer: Back to my house.

Question: Did you like doing the robberies?
Answer: Yeah, because of the money.

Question: Did you threaten to shoot anyone?
Answer: No.

Question: How and where did you get the gun that you had?
Answer: I don't know where they came from, I just had it.

Question: So how many robberies have you taken part in?
Answer: Just these two.

Question: Why did you take part in these robberies?
Answer: I'm broke and I needed the money.

Question: Is there anything else that you can add to this statement?
Answer: No.

Question: How were you treated during this interview?
Answer: Good, you were fair.

Question: Did you review your statement and agree with it?
Answer: Yes.

Question: Were you given the chance to make changes to your statement?
Answer: Yes.

> Question: Do you need to make any changes to your statement?
>> Answer: No.

A: The statement was concluded approximately 6:10 a.m. in the morning, and all those sections that I read to him, we went back over, he signed them and acknowledge that he understood them and I signed them as well.

Q: So did Mr. Austin sign each page of that statement?

A: Yes.

Q: How do you know he can read?

A: I asked him, you know, he wrote his name, it seemed like he could, read. He told me he could.

Q: And did you read them back to him when you were going over it with him?

A: Yes.

See Trial Tr. 91:6-94:25.

Under the Sixth Amendment, Petitioner is granted a constitutional right to effective counsel; however, legal representatives may not proffer meritless arguments. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); see United States v. Swinehart, 617 F.2d 336, 341 (3d Cir. 1980) ("[e]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation"); see also United States v. Nolan, 910 F.2d 1553, 1564 (7th Cir. 1990) (finding that trial counsel was effective in not filing a motion to suppress that would have failed).

Based on the forgoing trial testimony and signed and

-28-

initialed confession given by Petitioner, this Court concluded that the statement of admission was given voluntarily, knowingly, and intelligently.  Therefore, the confession was not coerced and Petitioner's attorney did not commit error in failing to pursue a motion to suppress.

**V.     CONCLUSION**

For the foregoing reasons, Petitioner failed to demonstrate constitutional violations for ineffective assistance of his trial and appellate counsel, under the standards espoused in <u>Strickland</u>.

An appropriate order follows.